UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| QUINTERO HAYES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:21-cv-02784-TWP-TAB |
| | ) |
| M. CONYERS Major, | ) |
| C. RINEHART Captain, | ) |
| Q. RUIZ Sergeant, | ) |
| THOMAS Officer, | ) |
| J. BOLDMAN Capt., | ) |
| SMITH Nurse, | ) |
| | ) |
| Defendants. | ) |

## ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DIRECTING FURTHER PROCEEDINGS

This matter is before the Court on Motions for Summary Judgment filed by Defendants Michael Conyers ("Major Conyers"), Charles Rinehart ("Captain Rinehart"), Q. Ruiz ("Sgt. Ruiz"), Thomas ("Officer Thomas"), and Jim Boldman ("Captain Boldman"), ("the State Defendants") (Dkt. 46), and by Defendant Kathleen Smith ("Nurse Smith") (Dkt. 51), (collectively, the "Defendants").  *Pro se* Plaintiff Quintero Hayes ("Mr. Hayes") initiated this action alleging the Defendants were deliberately indifferent to his expression of suicidal thoughts and his need for medical care while he was confined at Pendleton Correctional Facility in 2021.  Although Mr. Hayes has not responded, the evidence designated by the Defendants does not support summary judgment, so the motions are **denied**.

### I.  LEGAL STANDARD

A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

as a matter of law.  *See* Fed. R. Civ. P. 56(a).  When reviewing a motion for summary judgment, the court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party.  *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *See Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).  A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant.  *Grant v. Trs. of Indiana Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Id*. at 325.

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing particular parts of the record, including depositions, documents, or affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.  Fed. R. Civ. P. 56(e).  "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts."  *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II. FACTUAL BACKGROUND

Mr. Hayes failed to respond to the summary judgment motions. Accordingly, facts alleged in the motions are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). Still, the evidence is considered in the light most favorable to Mr. Hayes.

Mr. Hayes is pursing Eighth Amendment claims against five correctional officers who worked at the Pendleton Correctional Facility: Major Conyers, Captain Rinehart, Sergeant Ruiz, Officer Thomas, Captain Boldman; and one nurse: Nurse Smith.

All material events took place on January 17 or 18, 2021.[1] On that date, Mr. Hayes' unit was locked down, and inmates were locked in their cells. (Dkt. 47-1 at 21:17–21.) Sometime before lunch, Mr. Hayes began experiencing suicidal thoughts. *Id.* at 34:3–20. He told Sgt. Ruiz he was experiencing suicidal thoughts and needed to see the mental health staff. *Id.* at 34:23–25. Sgt. Ruiz responded that he would contact the medical staff but did not stay with Mr. Hayes. *Id.* at 35:9–11.

Later, when Sgt. Ruiz and Officer Thomas delivered lunch in the unit, Mr. Hayes told them he was suicidal. *Id.* at 38:10–15. They stated they would contact the medical staff but did not stay with Mr. Hayes. *Id.* Around that time, Mr. Hayes wrote, "I am suicidal" on paper and displayed it so officers could see it on the security monitors. *Id.* at 39:8–14.

---

[1] Mr. Hayes' deposition testimony proceeds as though the events took place on January 17, but the relevant medical documentation refers to January 18. *Compare, e.g.*, Dkt. 47-1 at 10:20–22 *to* Dkt. 51-2 at 2. The distinction has no bearing on the outcome of the case.

Approximately one hour later, Officer Mathema, a non-party,[2] passed Mr. Hayes' cell. *Id.* at 40:15–10. The other officers had informed him of Mr. Hayes' suicide threat, and he was there to check on Mr. Hayes' safety. *Id.* at 41:20–42:1. At the time, inmates in Mr. Hayes' unit were allowed to keep razor blades in their cells. *Id.* at 52:14–24. Mr. Hayes showed Officer Mathema a razor blade and said he was going to cut himself. *Id.* at 41:5–16. Officer Mathema begged Mr. Hayes not to cut himself and said he would spray him with OC spray if he began to cut himself. *Id.* at 42:3–25.

Officer Mathema walked away, and Mr. Hayes immediately made three cuts, each approximately two inches wide, across his right wrist, just below the palm of his hand. *Id.* at 44:1–12, 61:9–62:6, 63:18–64:20. Mr. Hayes did nothing to control the bleeding. *Id.* at 31:1–7.

Approximately an hour later, Officer Mathema returned with a non-party nurse, who was passing out medication on the range. *Id.* at 26:18–27:3. When they arrived at Mr. Hayes' cell, the cuts were visibly bleeding, and he told them his wrist was bleeding. *Id.* at 27:6–11. The nurse observed that Mr. Hayes had cut himself, but she rendered not treatment, rather she continued her rounds. *Id.* at 27:20–28:2. Officer Mathema radioed Sgt. Ruiz. *Id.*

Within a few minutes, officers took Mr. Hayes to a holding cell, which was common practice before an inmate was taken out of the unit. *Id.* at 27:20–28:15. He was there approximately fifteen minutes, and Officers Mathema, Officer Thomas, and Sgt. Ruiz were in their office nearby. *Id.* at 28:16–29:10. A different officer escorted Mr. Hayes across the prison yard to the medical department. *Id.* at 29:23–25, 66:21–67:6.

When Mr. Hayes arrived at medical, he waited "for a little bit" while Nurse Smith worked with a different patient. *Id.* at 67:15–20. Nurse Smith's notated that she saw Mr. Hayes for "suicide

---

[2] Mr. Hayes originally named Officer Mathema as a defendant, then withdrew claims against him. *See* Dkt. 2 at 1.

4

monitoring." (Dkt. 51-2 at 1.) She measured Mr. Hayes' blood pressure using a cuff on his upper arm and his temperature and blood-oxygen levels by placing a monitor on his finger. (Dkt. 47-1 at 55:2–7, 72:2–22.)

Nurse Smith's notes do not document that she gave any attention to Mr. Hayes' cuts, and he maintains definitively that she did not. (Dkt. 47-1 at 74:16–17; Dkt. 51-2 at 1.) How much Mr. Hayes bled is not clear based on his testimony. However, he attests that there was blood on the cuffs of his sweater and on his hands when Nurse Smith examined him. (Dkt. 47-1 at 62:23–63:8, 73:7–14.) Following Nurse Smith's examination, Mr. Hayes was taken to a suicide monitoring cell, where an inmate janitor provided him some tissues or napkins to clean up the blood. *Id.* 74:18–75:12. Mr. Hayes developed an infection that caused his hands to swell painfully, but he did not seek medical attention for it and instead treated the infection with ointment he obtained from another inmate. *Id.* at 78:18–81:5.

Mr. Hayes attests that, previously, when inmates in his unit expressed suicidal thoughts, officers responded that they could not be moved to a suicide monitoring unit unless they harmed themselves because there were not enough spaces in the monitoring units. Mr. Hayes heard Officer Thomas and Sgt. Ruiz make these statements and they indicated their statements were based on directions from Major Conyers, Captain Rinehart, and Captain Boldman. *See id.* at 11:6–12:5, 36:2–21, 37:2–38:9, 44:20–45:25.

### III.  DISCUSSION

A prison official "violates the Eighth Amendment upon exhibiting 'deliberate indifference to a substantial risk of serious harm to an inmate.'" *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). This may include deliberate indifference to an objectively serious medical need. *Id.* at 721–22. "A medical condition is serious

if it 'has been diagnosed by a physician as mandating treatment' or 'is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Perry v. Sims*, 990 F.3d 505, 511 (7th Cir. 2021) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)).

Deliberate indifference requires more than negligence or even objective recklessness. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). The plaintiff "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Id*. "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011).

"Non-medical defendants . . . can rely on the expertise of medical personnel." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011). "Non-medical defendants cannot simply ignore an inmate's plight," but, "if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Id.* A non-medical defendant satisfies the Eighth Amendment by investigating an inmate's complaints and referring them to the responsible medical providers, unless the defendant knows or has reason to believe that the medical staff is mistreating the inmate or not treating him at all. *Id.* at 755–56.

The State Defendants argue the Eighth Amendment deliberate indifference claims fail because they did not act with deliberate indifference towards Mr. Hayes. Additionally, Major Conyers, Captain Rinehart, and Captain Boldman argue they lacked sufficient personal involvement. Nurse Smith contends the claim against her cannot succeed for two reasons. First, the cuts on Mr. Hayes wrists did not rise to the level of an objectively serious medical condition and second, Mr. Hayes misidentifies the individual he saw as Nurse Smith. The Court will address the parties' contentions in turn.

6

A.  **Officer Thomas and Sgt. Ruiz**

Officer Thomas and Sgt. Ruiz do not dispute that Mr. Hayes' expression of suicidal thoughts placed them on notice of a substantial risk of serious harm. Rather, they argue that no reasonable jury could find their response deliberately indifferent. *See* Dkt. 48 at 5. As they see it, they responded reasonably to Mr. Hayes' expression of suicidal thoughts by telling him they would contact medical personnel and sending Officer Mathema to check on him.

Resolving factual disputes in Mr. Hayes' favor and viewing the evidence in the light most favorable to him, a reasonable jury could find deliberate indifference from the evidence the Defendants have tendered. For purposes of summary judgment:

- Mr. Hayes told Sgt. Ruiz about his suicidal thoughts before lunch. (Dkt. 47-1 at 34:23–25.)

- Mr. Hayes was locked in his cell. *Id.* at 21:17–21.

- Sgt. Ruiz left Mr. Hayes alone in his cell, even though inmates in his unit could keep razor blades. *Id.* at 52:14–24.

- No Defendant has presented an affidavit or other evidence that they were unaware that inmates could keep razor blades.

- Sgt. Ruiz responded that he would contact the medical staff. *Id.* at 35:9–11. However, the medical staff had not arrived by the time Sgt. Ruiz returned to deliver lunch.

- Sgt. Ruiz and Officer Thomas stated they would contact the medical staff and again left Mr. Hayes alone, locked in his cell possibly with a razor blade. *Id.* at 38:10–15.

- The officers sent Officer Mathema to check on Mr. Hayes, but he did not arrive for approximately an hour. *Id.* at 40:15–10.

- Officer Mathema also left Mr. Hayes alone, possibly with a razor blade. *Id.* at 44:1–12.

- Mr. Hayes cut himself and then bled in his cell for approximately an hour before anyone arrived. *Id.* at 26:18–27:3.

7

- The nurse who arrived came to pass out medications—not to respond to Mr. Hayes' suicidal threats. *Id.*

A reasonable jury could view the officers' decisions—twice—to leave Mr. Hayes unattended, locked in his cell, possibly with a razor blade, as evidence of deliberate indifference. Perhaps they mitigated their indifference by alerting Officer Mathema, but he did not arrive for an hour, and he too left Mr. Hayes unsupervised for an hour after checking on him, so a jury could reasonably infer that they did not adequately convey the seriousness of the situation. Further, the evidence does not compel the conclusion that the Defendants appropriately deferred to medical professionals. *See Arnett*, 658 F.3d 755–56. Rather, a jury could infer that the Defendants never actually contacted the medical staff or at least that they knew by the time hours had passed that Mr. Hayes was not actually in the care of medical professionals. When Mr. Hayes told Sgt. Ruiz a second time that he was suicidal, he knew no medical professional had made contact with Mr. Hayes. And, although the episode lasted multiple hours, no medical professional came to Mr. Hayes' cell in response to his report of suicidal thoughts. On this record, summary judgment is not possible.

**B.**     **Major Conyers, Captain Rinehart, and Captain Boldman**

Major Conyers, Captain Rinehart, and Captain Boldman—the "supervisory defendants"—argue that they are entitled to summary judgment because:

> Plaintiff does not make any allegations specific to Defendants Conyers, Rinehart, or Boldman. Plaintiff never saw, spoke with, or informed Defendants Rinehart, Conyers, or Boldman of his suicidal ideations. [. . .] Thus, Plaintiff's claims against Defendants Conyers, Rinehart, and Boldman fail as a matter of law because they were not personally involved in the constitutional deprivations alleged by Plaintiff.

(Dkt. 48 at 6.)

It is true that "individual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation," *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017)

8

(internal quotation omitted), and " supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly," *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018).  But personal responsibility is established with a "causal connection, or an affirmative link, between the misconduct complained of and the official sued."  *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983).

The State Defendants have tendered evidence of a causal connection between the supervisory defendants and the officers who allegedly disregarded Mr. Hayes' suicidal ideations. Mr. Hayes attests that he heard Officer Thomas and Sgt. Ruiz state that the supervisory defendants instructed them not to take inmates who threatened suicide to suicide monitoring units unless they harmed themselves.  *See* Dkt. 47-1 at 11:6–12:5, 36:2–21, 37:2–38:9, 44:20–45:25.  Because the declarants of those statements are all defendants in this action, the statements are not inadmissible hearsay.  Fed. R. Evid. 801(d)(2), 805.  The State Defendants do not argue otherwise.  A jury considering those statements could reasonably infer that Officer Thomas and Sgt. Ruiz declined to take prompter action because their superior officers instructed them not to seek suicide monitoring for inmates who had not harmed themselves.  This is evidence of a causal connection between the supervisory defendants and the tortious conduct underlying Mr. Hayes' claims.

Major Conyers, Captain Rinehart, and Captain Boldman also state in affidavits that they did not create or develop prison policies, particularly involving medical or mental health treatment. (Dkt. 47-2 at ¶¶ 4– 5; Dkt. 47-3 at ¶¶ 4–5; Dkt. 47-4 at ¶¶ 4–5.)  At best, these statements create a material dispute with the statements attributed to them and their subordinate officers.  The Court must resolve this dispute in Mr. Hayes' favor at summary judgment. Accordingly, summary judgment is **denied** as to Major Conyers, Captain Rinehart, and Captain Boldman.

C.  **Nurse Smith**

Nurse Smith does not dispute that she provided no medical care for Mr. Hayes' cuts. She seeks summary judgment based on the first prong of deliberate indifference. She argues the Court to find that Mr. Hayes did not present to her with a serious medical need because either:

1) Mr. Hayes did not see her at all (based on her testimony that she does not remember seeing an inmate with serious cuts and would certainly not have left them untreated);

2) Mr. Hayes had no cuts when he saw her (based on the absence of references to cuts in the medical records); or

3) Mr. Hayes' cuts were not serious (based on inconsistencies in Mr. Hayes' testimony and the fact that no one treated them).

*See* Dkt. 52 at 11–14. These contentions disregard the operative legal standard, which requires the Court to resolve evidentiary disputes in Mr. Hayes' favor at summary judgment.

Mr. Hayes' testimony may or may not be credible, but the Court does not consider credibility at summary judgment. *Miller*, 761 F.3d at 827, ("Recall that our job when assessing a summary judgment motion is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts."). Mr. Hayes testified under oath that he cut himself with a razor three times; that his cuts bled for at least an hour before he saw Nurse Smith; and that he had blood on his wrists and hands before and after he saw her. That Nurse Smith did not document his cuts in her notes is contrary evidence, but the Court must resolve the dispute in Mr. Hayes' favor at this stage of the proceedings.

Nurse Smith is free to testify at trial that she did not examine Mr. Hayes at all and that a different medical professional authored the report that appears in the record. *See* Dkt. 52 at 13–14. A jury may well find her testimony credible, but she tendered a medical record bearing her name and documenting that Mr. Hayes' blood pressure, pulse, temperature, and blood-oxygen levels were measured. (Dkt. 51-2 at 1.) Mr. Hayes has testified under oath that Nurse Smith took

10

these measurements and ignored his bleeding cuts. Again, the Court must resolve the dispute in Mr. Hayes' favor at this stage.

The evidence at trial may reveal that Mr. Hayes has overstated the seriousness of his injuries. However, Mr. Hayes has testified under oath that he made three two-inch cuts on his wrist with a razor blade and that they bled for at least an hour before he saw Nurse Smith. More importantly, they were open—and therefore vulnerable to infection—when he saw Nurse Smith. *See Banks v. Patton*, No. 14-CV-381-PP, 2019 WL 189243, at *6 (E.D. Wis. Jan. 14, 2019), ("[C]ommon sense dictates that wounds, especially as serious as the plaintiff's, must be kept clean in order to prevent or treat infections, and that regular, consistent bandage changes, especially in an environment as contaminated as a jail, help keep wounds clean."). Indeed, Nurse Smith attests in her affidavit that "if an offender advised me that he had cut himself or I observed blood on the offender from any source, I would further investigate the situation to address the possible injury." (Dkt. 51-1 at 2.) For purposes of summary judgment, Mr. Hayes came to Nurse Smith with bleeding cuts that required medical attention.

As a final matter, Nurse Smith cites four cases for the proposition that "the Seventh Circuit has repeatedly held that cuts and abrasions were not objectively serious medical conditions." (Dkt. 52 at 12.) One of the four is a Central District of Illinois decision that she describes as having distinguishable facts. *Id.* ("1/2 inch cut not requiring stitches"). *Davis v. Jones*, 936 F.2d 971 (7th Cir. 1991) considered whether an arrestee should have been transported to a hospital to receive stitches—not whether he should be provided bandages in the prison infirmary where he already was. In *Pinkston v. Madry*, 440 F.3d 879 (7th Cir. 2006), the defendant actually provided the plaintiff with bandages and an alcohol pad. And *Zentmyer v. Kendall County, Ill.*, 220 F.3d 805

11

(7th Cir. 2000), concerned an ear infection that led to hearing loss. In short, these cases do not control the outcome of this one given the factual record at summary judgment.

## IV. <u>CONCLUSION</u>

For the reasons explained above, the Defendants' Motions for Summary Judgment, Dkts. [46] and [51], are **DENIED**. Having survived summary judgment, Mr. Hayes must participate in a settlement conference and, if necessary, a trial.

The Court notes that Mr. Hayes was transferred to parole and released from prison on August 29, 2023. *See* Dkt. 56. He did not respond to the summary judgment filings and has not made any filings in this action in over two years; however, he did contact the clerk's office on November 13, 2023 and provided his new address. Upon receipt of this Order, Mr. Hayes must file a statement of his intent to continue pursuing the case by **no later than Friday, March 29, 2024**. If he does not do so, this action may be subject to dismissal for failure to prosecute. If Mr. Hayes wishes for the Court to recruit an attorney to assist him in this case, he must complete the attached form motions to demonstrate his eligibility. The **Clerk is directed** to include form motions for appointment of counsel and leave to proceed *in forma pauperis* with this motion.

**SO ORDERED.**

Date: 3/1/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Quintero Hayes
221 South Prospect Street
Rockford, Illinois  61104

Adam Jeffery Strahan
LEWIS AND WILKINS LLP
strahan@lewisandwilkins.com

Eric Ryan Shouse
LEWIS AND WILKINS LLP
shouse@lewisandwilkins.com

Jordan Douglas Hall
LEWIS AND WILKINS LLP
hall@lewisandwilkins.com

Bryan Findley
CASSIDAY SCHADE LLP
bfindley@cassiday.com

Joseph A. Panatera
CASSIDAY SCHADE LLP
jpanatera@cassiday.com